MARCELINO RIVERA ET UX., Appellants, *v.* THE REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

No. 1311. Submitted May 11, 1954.—Decided June 30, 1955.

512

*Celestino Domínguez Rubio* for appellants. The Registrar appeared by brief.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On November 30, 1951, the Municipal Assembly of Arroyo segregated a certain lot from a property belonging to the Municipality of Arroyo, granting the usufruct of that lot to appellant Modesta Morales de Rivera for a period of 20 years and authorizing her to record the usufruct in the Registry of Property of Guayama. Appellant had erected a house on the segregated lot before she was granted the usufructuary right. The Registrar of Property of Guayama recorded the segregation, but denied registration of the usufruct on the following grounds: (1) that under § 70 of the Municipal Law of Puerto Rico, a municipal corporation is without power to grant usufructs except in perpetuity; (2) that under § 70, a municipal corporation cannot grant a usufruct on a lot on which a building has been erected prior to the granting of the usufruct; (3) that for the purposes of schedule of fees No. 9, the value of the usufruct or of the lot must be determined by the Municipal Assembly and not by the usufructuary.

It is true that § 70 of Act No. 53 of April 28, 1928 (Sess. Laws, p. 334) —An Act establishing a system of local government for the municipalities of Porto Rico—provides that: "On petition, the municipal assembly may *grant lots*

*in perpetuity* for the construction of houses thereon, under such conditions as the assembly may determine by ordinance approved for the purpose; and where a lot has been granted as aforesaid, the owner of the house constructed thereon shall have the use of said lot during such time as he maintains on said lot a building in good condition, in accordance with regulations prescribed by said ordinance." See, also, Act No. 2 of September 27, 1951 (Sp. Sess. Laws, p. 96), "To safeguard the right of the usufructuaries of municipal lots to retain their status as such . . ." But it is no less true that, according to the legal maxim of great weight in statutory construction, "he who can do the most can do the least": 2 *Enciclopedia Jurídica Española* 55, Francisco Sein ed., 1910, possibly taken from Paulo's maxim, *"In eo quod plus sit, semper inest et minus"* (In that which is greater the less is always contained.) The contrary would be to stoop to an illegal interpretation by merely following the literal meaning of each word. Nor is it less true that in enacting Act No. 120 of April 24, 1951 (Sess. Laws, p. 268), "To amend subdivision 'B' of § 291 of the Political Code of Puerto Rico and to levy a tax on the right of usufruct of municipal and insular lots," which is a law *in pari materia* with § 70 of the Municipal Law, the Legislative Assembly of Puerto Rico employed the term life tenants instead of the term usufructs in perpetuity, and even made usufructs for a period of less than five years tax exempt.

It is true that the language of § 70, regarding the construction of buildings, seems to indicate that the granting of usufruct of municipal lots shall be made for future constructions and not for constructions already existing at the time of the grant. But it is no less true that in order to avoid any distinction between lots built upon and those which are not, the Legislative Assembly of Puerto Rico passed Act No. 61 of June 16, 1954 (Sp. Sess. Laws, p. 334), "To amend § § 70 and 71 of Act No. 53 (Municipal Law), approved April 28, 1928," expressly authorizing the Munici-

pal Assembly to grant usufructs in perpetuity to "any person who prior to the approval of this Act has built or acquired a building on a lot belonging to the municipality, without there being any proof that he has been previously granted an usufruct . . ." That the legislative intent was to solve the problem created by the possessors or usufructuaries who had constructed thereon before the Municipal Assemblies could proceed to parcel, segregate, and grant lots, appears unequivocally from the debate on the passage of Act No. 61. IV-II *Journal of Proceedings of the Legislative Assembly*, 1954 Regular Session, p. 1086.

Where the valuation of a recordable right does not appear from the document presented because no numerical consideration or price is involved in the transaction, as is the case of a gratuitous grant of usufruct, the registrars may use the official assessment of the property to determine the value of the recordable interest. *Casalduc* v. *Registrar* 67 P.R.R. 582, 584 (Todd, Jr.) (1947). If there is no official assessment, the registrar may determine the value on the basis of other recorded contracts involving surrounding tenements. *Board of National Missions* v. *Registrar*, 53 P.R.R. 623, 627 (Del Toro) (1938). If there is no official assessment or proof of record on contracts involving surrounding tenements, the registrar may demand from the party requesting the registration the affidavit required under the former practice setting forth the value of the right sought to be recorded. *Board of National Missions* v. *Registrar, supra.*

The decision of the Registrar of Guayama denying registration of the right of usufruct will be reversed. Upon presentation of a verified petition for registration setting forth the value of the right sought to be recorded, the usufruct shall be recorded in favor of appellant.